IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THELECIA TILLMAN-WILLIAMS, | : | CIVIL ACTION |
| AS ADMINISTRATRIX OF THE | : | |
| ESTATE OF ROGER COTTMAN, | : | No. 23-3009 |
| DECEASED | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY | : | |

## **MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                          **October 3, 2023**

Plaintiff Thelecia Tillman-Williams, administratrix of Roger Cottman's estate, brings this suit under 42 U.S.C. § 1983 and Pennsylvania state law against Defendant Southeastern Pennsylvania Transportation Authority (SEPTA) to recover damages arising from Cottman's death after being struck by a SEPTA train. SEPTA moves to dismiss the federal claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because Tillman-Williams has not sufficiently pled a constitutional violation, the partial motion to dismiss will be granted with prejudice.

All remaining claims in the Complaint arise under state law. Because Tillman-Williams and SEPTA are both citizens of Pennsylvania, diversity jurisdiction is lacking, and the Court will therefore remand the case to the Philadelphia County Court of Common Pleas.

## BACKGROUND

On January 20, 2021, Roger Cottman "came to be" on the train tracks at Track 4 of the Olney Transportation Center in North Philadelphia. Compl. ¶ 11, ECF No. 1-8. A woman saw Cottman on the tracks and alerted a SEPTA police officer on the station's mezzanine level. *Id.* ¶

1

12. In response, the officer descended to the platform level and located Cottman on the tracks. *Id*. ¶ 13. A train approached soon after. *Id*. ¶ 14. Seeing the train, the officer gave a hand signal meant to tell the train operator to stop. *Id*. Tragically, the train struck Cottman, and he ultimately died from the resulting injuries. *Id*. ¶ 15. The Complaint claims Cottman was present on the tracks for "no less than three to four minutes" before the train struck him. *Id*.

As administratrix of Cottman's estate, Tillman-Williams commenced this action with a Writ of Summons in the Philadelphia County Court of Common Pleas on January 18, 2023. ECF No 1-3. After conducting pre-complaint discovery, Tillman-Williams filed suit against SEPTA on July 18, 2023. ECF No. 1-8. Count I asserts state law negligence claims, Count II constitutional violations pursuant to 42 U.S.C. § 1983, and Count III an estate administration and wrongful death claim. Compl. ¶¶ 17-37. SEPTA filed a Notice of Removal to federal court on August 7, 2023. ECF No. 1. The next day, SEPTA moved to dismiss Count II of the Complaint. ECF No. 2.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all factual allegations . . . as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether [the] plaintiff may be entitled

2

to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

Whether or not a plaintiff seeks leave to amend, a district court considering a 12(b)(6) motion "must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

**DISCUSSION**

Count II brings § 1983 claims against SEPTA for violating Cottman's constitutional rights. Compl. ¶¶ 22, 25. Specifically, Tillman-Williams claims SEPTA violated Cottman's (a) right to liberty; (b) right to bodily integrity; (c) right to personal safety and reasonable protection from foreseeable harm while at a stateowned, operated, controlled, and maintained train station; (d) right to protection of his health and welfare; and (e) rights to substantive and procedural due process as guaranteed by the Fourteenth Amendment. *Id*. ¶ 25. Tillman-Williams brings her § 1983 claims pursuant to two theories: (1) a state-created danger theory, and (2) a *Monell* claim based on SEPTA's failure to train and supervise its employees. Compl. ¶¶ 20-25.

Section 1983 does not create substantive rights; it provides remedies for "deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Thus, to state a claim under § 1983, plaintiffs must allege "a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013) (en banc).

The § 1983 claims in this case allege violations of Tillman-Williams' rights under the Fourteenth Amendment's Due Process Clause, which prohibits a state from "depriv[ing] any

3

person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This right to due process is understood as a "limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). While the Due Process Clause generally "does not impose an affirmative obligation on the state to protect its citizens," the state-created danger theory provides an exception. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 431 (3d Cir. 2006). Under this theory, a cause of action may exist under § 1983 when the state "affirmatively creates or enhances a risk of danger." *Id*. To successfully plead a state-created danger claim, a plaintiff must allege:

1. [T]he harm ultimately caused was foreseeable and fairly direct;

2. a state actor acted with a degree of culpability that shocks the conscience;

3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Haberle v. Troxell*, 885 F.3d 170, 176-77 (3d Cir. 2018) (quoting *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006).

SEPTA first argues the Complaint fails to plead a viable claim under the state-created danger theory because "Mr. Cottman was a member of the general public and SEPTA did nothing to create his peril." Mem. Law Supp. Mot. Dismiss 2-3, ECF No. 2-1. In the absence of any constitutional violation, SEPTA claims it cannot be held liable under *Monell*. Def.'s Resp. Supp. Mot. Dismiss 5, ECF No. 5.

Tillman-Williams must plead all four state-created danger elements to sufficiently state a claim. The Court focuses on the third and fourth elements, which SEPTA claims are the "principal

shortcomings" of Tillman-Williams' constitutional claim. Mem. Law Supp. Mot. Dismiss 2. The third element of the state-created danger theory requires a plaintiff to be a foreseeable victim of the defendant's acts. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 912 (3d Cir. 1997). Foreseeable plaintiffs include "member[s] of a discrete class of persons subjected to the potential harm brought about by the state's actions." *Id.* at 913. But members of the "general population" are not foreseeable plaintiffs—some sort of relationship must exist between the plaintiff and the state actor. *Id.* at 912-13. Recognizing otherwise "would expand the scope of the state-created danger theory beyond its useful and intended limits." *Id.* at 913 n.12.

Tillman-Williams alleges falling onto train tracks poses a risk of harm to Olney Transportation Center patrons. Compl. ¶¶ 7-8. She argues this makes Cottman a foreseeable victim, because he was a SEPTA "patron and an individual in the immediate vicinity of the train tracks." *Id.* ¶ 24. But Cottman is not a foreseeable victim. Courts in the Eastern District of Pennsylvania have consistently held SEPTA passengers are too numerous to constitute a discrete class. *See, e.g.*, *Gomez v. Se. Pa. Transp. Auth.*, Civ. No. 22-2949, 2022 WL 16540074, at *5-6 (E.D. Pa. Oct. 27, 2022), *aff'd*, No. 22-3230, 2023 WL 5950549 (3d Cir. Sept. 13, 2023); *see also Burnette v. City of Phila.*, Civ. No. 13-0288, 2013 WL 1389753, at *6 (E.D. Pa. Apr. 5, 2013) ("SEPTA passengers do *not* constitute a 'discrete class' of potential plaintiffs under the state-created danger doctrine, by virtue of being in a 'customer and servicer' relationship with SEPTA.") (quoting *Martinez v. Se. Pa. Transp. Auth.*, Civ. No. 08-5021, 2009 WL 5101824, at *5 (E.D. Pa. Dec. 15, 2009)).

As a patron of Olney Transportation Center, Cottman was a member of the general population of SEPTA passengers. There are no allegations indicating an increased risk of falling specific to Track 4, the Olney Transportation Center, or on the day of January 20, 2021. Instead,

the Complaint repeatedly refers to the *general* risk of falling on all SEPTA train tracks. *See, e.g.*, Compl. ¶ 8 ("There had been 522 reported incidents of patrons falling onto train tracks between 2016 and 2020.").[1] Alleging a multiyear, general risk of harm to *any* SEPTA passenger utilizing *any* SEPTA station undermines the characterization of Cottman as a foreseeable plaintiff. *See Crockett v. Se. Pa. Transp. Ass'n*, Civ. No. 12-4230, 2013 WL 2983117, at *7 (E.D. Pa. June 14, 2013), *aff'd sub nom. Crockett v. Se. Pa. Transp. Auth.*, 591 F. App'x 65 (3d Cir. 2015). Because Cottman was a member of the general population of SEPTA passengers, he cannot be a foreseeable plaintiff, and Tillman-Williams has thereby failed to plausibly allege the third element.[2]

Further, because all four state-created danger elements must be sufficiently pled to state a claim, failure to allege the third element means Tillman-Williams' claim fails. *See Brown v. Commonwealth of Pa., Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 481 (3d Cir. 2003) ("We need to consider only one of the [state-created danger] elements to understand why Appellants' state-created danger claim fails."). An amended complaint would be futile: Tillman-Williams has no possibility of sufficiently pleading the third element given the fundamental fact of Cottman's status as a member of the general population of SEPTA passengers. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard…asks for more than a sheer possibility that

---

[1] Tillman-Williams' response introduces a news article citing this statistic. Ex. C at 4, ECF No. 4-3. The article reveals "[t]he vast majority of passenger falls happen on the Market Frankford Line." *Id*. The Market-Frankford Line does not include Olney Transportation Center, further highlighting Tillman-Williams' reliance on the *general* risk of SEPTA track falls. *Market-Frankford Line*, Southeastern Pennsylvania Transportation Authority (last visited October 3, 2023), https://www5.septa.org/travel/routes/market-frankford-line-0001/   [https://perma.cc/DN4N-6ECS].

[2] Tillman-Williams' response, which cites no case law in its third element discussion, similarly fails. Characterizing Cottman as "a business invitee," "a passenger in common carriage," and "in the exact class of individuals [on the train platform]…at risk of being struck" does not change his status as a SEPTA passenger. Pl.'s Resp. to Mot. Dismiss 14, ECF No. 4.

a defendant has acted unlawfully."). The Court nonetheless considers the fourth element given SEPTA's emphasis on Tillman-Williams' failure to plead an affirmative act.

The fourth element requires a plaintiff to allege the state actor affirmatively "created a danger" or "rendered the citizen more vulnerable to danger than had the state not acted at all." *L.R. v. Sch. Dist. of Pa*, 836 F.3d 235, 242 (3d Cir. 2016) (quoting *Bright*, 443 F.3d at 281). "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282. There is an "inherent difficulty in drawing a line between an affirmative act and a failure to act." *L.R.*, 836 F.3d at 242. But "attempts to redefine clearly passive inaction as affirmative acts" are rejected. *Morrow*, 719 F.3d at 178.

Tillman-Williams largely focuses on SEPTA's failure to act. Count II asserts: "[t]he *failure* of the Defendant to comply with its duties…constitutes violations of the Plaintiff's decedent's constitutional rights." Compl. ¶ 22 (emphasis added). Tillman-Williams further claims SEPTA created the danger and rendered Cottman more vulnerable to danger by "*failing* to appropriately respond" and "*failing* to promulgate and/or train its employees." *Id*. ¶ 24 (emphasis added). Alleging SEPTA failed to act is insufficient: "an alleged failure *to do something*, standing alone, cannot be the basis for a state-created danger claim." *Johnson v. City of Pa.*, 975 F.3d 394, 401 (3d Cir. 2020). Thus, in *Johnson*, the Third Circuit held a 911 phone operator's failure to communicate a trapped family's location to firefighters was "a classic allegation of omission, a failure to do something—in short, a claim of inaction and not action." *Id*. The phone operator's communication failure did not satisfy the fourth element in *Johnson* because it was not an affirmative act. *Id*. SEPTA's failures here are likewise not affirmative acts and cannot satisfy the fourth element.

Nonetheless, viewing the facts in the light most favorable to Tillman-Williams, she has plausibly alleged one affirmative act by SEPTA. The SEPTA officer descending to the platform and locating Cottman in response to a report is plainly an affirmative act. If the SEPTA officer had *failed* to do something in this context, he would not have responded to the report at all. But an affirmative act by SEPTA is not enough. Under the state-created danger theory, the state's affirmative act must "*create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow*, 719 F.3d at 177; *see also Bright*, 443 F.3d at 283 n.7 ("But an affirmative act, while necessary, is not sufficient."). To do so, the affirmative act "must amount to a restraint of personal liberty that is similar to incarceration or institutionalization." *Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022) (internal quotation marks omitted) (quoting *Ye v. United States*, 484 F.3d 634, 640-41 (3d Cir. 2007).

For example, a state actor depriving someone of the ability to act on his or her own behalf may make them more vulnerable to danger. *Id*. at 885. *Mears* involved a state nurse who affirmatively acted by leaving a mother alone in a psychiatric hospital room with her son. *Id*. The visit should have been supervised, but supervision ended when the nurse left the room. *Id*. Critically, the hospital did not allow the mother to leave after the nurse left. *Id*. Deprived of the ability to leave on her own behalf, the mother remained in the room, and her son attacked her. *Id*. The Third Circuit found a plausible allegation of the fourth element because the nurse affirmatively exited, withdrew her supervision mid-visit, and left the mother "more vulnerable to harm" with no way to leave. *Id*.

Similarly, a state actor can create or enhance danger when it displaces the caretaker of someone clearly in need of protection. *Kneipp*, 95 F.3d at 1209. In *Kneipp*, police officers stopped a couple outside. *Id*. They allowed the husband to go home, but left the visibly intoxicated wife to

walk home alone in the cold. *Id*. After prolonged exposure to the cold, the wife suffered permanent brain damage. *Id*. at 1203. The Third Circuit held the officers' "affirmative acts…created a dangerous situation" or at least "greatly increased" the risk of harm by cutting off the wife's "private source of protection." *Id*. at 1209-10.

In this case, the SEPTA officer's act involved no restraint on Cottman's personal liberty. No facts allege the SEPTA officer deprived Cottman of the ability to act on his own behalf, or displaced any caretaker. While the officers in *Kneipp* abandoned the wife in the cold, SEPTA did not expose Cottman to any new danger—he was already on the tracks when the officer arrived. And unlike the nurse in *Mears*, the officer did not leave Cottman more vulnerable to harm. There are no allegations that the officer affirmatively stopped other rescue efforts, or ordered Cottman to stay on the tracks. If anything, the officer attempted to reduce potential harm to Cottman by signaling for the train to stop. The officer's other alleged acts were limited to locating Cottman and remaining in the vicinity. None of these acts put Cottman in a worse position than he would have been in had the officer not responded at all. The fourth element has not been plausibly pled.[3]

---

[3] In her response, Tillman-Williams argues the SEPTA officer's actions "would have lulled other individuals into believing that efforts were taking place to attempt to rescue Cottman." Pl.'s Resp. to Mot. Dismiss 15. This allegedly "created a much greater vulnerability to Mr. Cottman" because "other individuals and bystanders witnessing the same situation would be expected to stand down and not attempt rescue efforts." *Id*. There are no facts to support these claims, and these statements are entirely speculative. These additional claims are thus too attenuated to satisfy the fourth element.

The Court also notes Tillman-Williams' response reiterates the "gist" of the Complaint is "the Defendant *failed* to implement and then supervise and train its employees in a manner which is absolutely necessary to react and respond to a report of a person on the train tracks." *Id*. (emphasis added).

Tillman-Williams also alleges SEPTA's failure to train and supervise its employees on emergency response procedures violated Cottman's constitutional rights. Compl. ¶ 20-22.[4] Under a *Monell* theory of liability, a state actor may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," violates a constitutional right. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). The § 1983 claims in this case allege violations of the Due Process Clause. The Due Process Clause is a "limitation on the State's power to act" and does not impose "an affirmative obligation on the State to ensure that [life, liberty, or property] interests do not come to harm through other means." *DeShaney*, 489 U.S. at 195. Thus, the Supreme Court has "rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992).

*Monell* requires Tillman-Williams to plead the violation of a constitutional right and that SEPTA policy or custom caused the violation. But the Due Process Clause does not impose an affirmative obligation on SEPTA to protect the life, liberty, or property interests of its passengers. And as discussed above, SEPTA did not create the danger Cottman faced. Because SEPTA has not violated a constitutional right, Tillman-Williams' *Monell* claim fails. *See Gomez*, Civ. No. 22-2949, 2022 WL 16540074, at *7 (dismissing plaintiff's *Monell* claim because defendants did not create danger resulting in harm); *see also Macias v. Sch. Dist. of the City of Allentown*, Civ. No. 15-3730, 2017 WL 5453498, at *8 (E.D. Pa. Nov. 14, 2017) (same).

**CONCLUSION**

---

[4] SEPTA notes the Complaint does not refer to a *Monell* cause of action. Def.'s Resp. Supp. Mot. Dismiss 5, ECF No. 5. Viewing the facts in the light most favorable to Tillman-Williams, the Court concludes she has raised a *Monell* claim.

10

The Court recognizes the tragedy at the heart of this case. But Tillman-Williams has failed to state a claim against SEPTA under the state-created danger theory and *Monell*. Because there has been no constitutional violation, SEPTA cannot be liable under § 1983. The motion to dismiss Count II will be granted with prejudice. Tillman-Williams' remaining claims, all of which arise under state law, will be remanded to the Philadelphia County Court of Common Pleas.

An appropriate Order follows.

BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.